UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAMELA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:14-CV-03493-AT-JSA |
| v. | ) | |
| | ) | |
| FULTON COUNTY SHERIFF | ) | |
| THEODORE JACKSON, IN HIS | ) | |
| OFFICIAL CAPACITY, AND | ) | |
| FULTON COUNTY, GEORGIA, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In 2011, Plaintiff Pamela Jackson, a Detention Officer ("DO") with the

Fulton County Sheriff's Office ("FCSO"), requested a reasonable accommodation

for her disabilities – breast cancer and lymphedema – under the Americans with

Disabilities Act, as amended by the Americans with Disabilities Amendments Act

of 2008 ("ADA"), 42 U.S.C. § 1201 *et seq.*  Ms. Jackson requested that she be

given a long-term assignment to a placement that had minimal contact with

inmates.  Rather than grant Ms. Jackson's requested accommodation, Defendants

Fulton County and the FCSO demoted Ms. Jackson and cut her pay almost 20% in

violation of the ADA and Fulton County's own ADA policy.

Ms. Jackson brings two claims: (1) failure to accommodate/disability discrimination under the ADA; and (2) retaliation under the ADA.  Defendants move for summary judgment on all claims.  Because Ms. Jackson has presented substantial evidence that Fulton County and the FCSO's actions were discriminatory and retaliatory and violated the ADA, Defendants' Motion fails.

## I.      Facts Underlying Ms. Jackson's Claims.

Ms. Jackson incorporates herein her Response to Defendant's Statement of Facts and her Statement of Disputed Material Facts as to Which There Exist Genuine Issues to be Tried.

## II.     Ms. Jackson's Claims Survive Summary Judgment. [1]

### A.      Defendants failed to accommodate Ms. Jackson.

Ms. Jackson establishes a prima facie case of disability discrimination if: (1) she is disabled; (2) she was a "qualified individual" at the relevant time, meaning that she could perform the essential functions of the job with or without reasonable accommodations; and (3) she was unlawfully discriminated against because of her

---

[1]     Summary judgment is appropriate only where no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Here, issues of material fact overwhelm any argument for summary judgment.  The Court is bound to accept the truth of Ms. Jackson's testimony and view the evidence and draw all inferences in a manner most favorable to her as the non-movant.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

disability or Defendants failed to accommodate her because of her disability.

*Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1256 (11th Cir. 2007); *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001); *Beatty v. Hudco Indus. Products, Inc.*, 2:10–CV–3051–JHH, 2012 WL 3030100, at *9 (N.D. Ala. July 23, 2012); *Jernigan v. BellSouth Telecomms., LLC*, 17 F. Supp. 3d 1317, 1321 (N.D. Ga. 2014).  Courts use the same *McDonnell Douglas* burden-shifting analysis used in Title VII cases to evaluate claims under the ADA.  *Holly*, 492 F.3d at 1255.  If Ms. Jackson establishes a prima facie case of failure to accommodate, the burden then shifts to Defendants to prove that "accommodating the plaintiff would impose an undue hardship on the operation of its business." *Terrell v. USAir*, 132 F.3d 621, 624 (11th Cir. 1998); *Rorrer v. City of Stowe*, 743 F.3d 1025, 1038-39 (6th Cir. 2014) (quoting *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996); *Keith v. Cnty. of Oakland,* 703 F.3d 918, 923 (6th Cir. 2013).

For purposes of summary judgment, Defendants do not dispute the Ms. Jackson is a qualified individual with a disability.  Rather, Defendants contend only that they accommodated Ms. Jackson when they reassigned her from DO to RDS on May 25, 2011.  Because Defendants cut Ms. Jackson's pay over $7,000 even though their own policies compelled that they not do so, they did not reasonably accommodate Ms. Jackson.  Moreover, because Defendants place other

3

DOs in long-term assignments with little to no interaction with inmates, they could have accommodated Ms. Jackson in her DO position.  Finally, because Defendants did not perform an undue burden analysis with respect to retaining Ms. Jackson in her DO position or with respect to the salary decrease, they have failed to meet their burden of proof on this affirmative defense and summary judgment must be denied.

1.     *The DO position.*

Defendants failed to make a reasonable accommodation for Ms. Jackson's disability and could have done so without undue hardship.  *Coker v. Enhanced Senior Living, Inc.*, No. 2:11-CV-0091-RWS, 2012 WL 4326429, *9 (N.D. Ga. Sept. 18, 2012) (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997)).  Although in general Defendants accurately state the rule espoused in *Pickering v. City of Atlanta*, 75 F. Supp. 2d 1374 (N.D. Ga 1999), that law enforcement officers that cannot have contact with detainees need not be accommodated, they fail to acknowledge the distinctions that make a difference in the FCSO.

The FCSO provides long term assignments to DOs in which they have little to no contact with inmates.  (Doc. 58, Oka Dep. 29:9-30:7.)  In fact, DO Freddie Taylor has been assigned to the garage at the Fulton County Courthouse since at

4

least 2010 and in that role he does not have contact with inmates.  (Doc. 53, Pl.'s Dep. 70:23-71:23.)  DO Hunt has been assigned to one of the courthouse entry points since at least 2011.  (Doc. 56, McKee Dep. 11:23-12, 15:1-18; Doc. 53, Doc. 53, Pl.'s Dep. 70:23-71:23.)  Officer Taylor has not been assigned to the jail since he started working in the garage and Officer Hunt has not been assigned to the jail since she began working courthouse security.  (Doc. 56, McKee Dep. 15:24-16:18.) Officer Taylor does not have contact with inmates.  (Doc. 56, McKee Dep. 19:15-21:9; Doc. 53, Doc. 53, Pl.'s Dep. 70:23-71:23.)  Officer Hunt has extremely limited contact with inmates.  (Doc. 56, McKee Dep. 20:7-21:9.)  Thus, this case is distinguishable from *Pickering* and Ms. Jackson has, at a minimum, established a material issue of fact as to whether she could have been accommodated in the DO position.

Because Ms. Jackson has established a prima facie case of failure to accommodate with respect to the DO position, the burden shifts to Defendants to show that it would have been an undue burden to accommodate her as a DO. Defendants cannot meet this burden because Ms. Dallas does not recall whether she did an undue hardship analysis.  (Doc. 57, Dallas Dep. 50:4-16.)  Nor does Ms. Dallas remember whether she explored the possibility of Ms. Jackson being reassigned to one of the courthouses as a reasonable accommodation for her

disability.  (Doc. 57, Dallas Dep. 51:24-53:23.)  Accordingly, Defendants have not

met their burden and summary judgment must be denied.  *See Jernigan*, 17 F. Supp.

3d at 1324 (denying summary judgment and noting that "the Defendant at this

juncture presented sufficient concrete, specific evidence to prove this undue

burden"); *Hill v. Clayton Cnty. Sch. Dist.*, 619 F. App'x 916, 921-22 (11th Cir.

2015) (reversing grant of summary judgment where defendant made "spare

assertions" of undue hardship).

### 2.   *The reassignment and pay cut.*

#### a.   **Reassignment outside the FCSO.**

Even if Ms. Jackson could not be accommodated as a DO, Defendants

should have accommodated Ms. Jackson by reassigning her without a loss in pay

or benefits.  *See* 29 C.F.R. § 1630.2(o).  The ADA specifically lists "reassignment

to a vacant position" as a form of reasonable accommodation.  42 U.S.C.

§ 12111(9)(B) (1994); 29 C.F.R. § 1630.2(o)(2)(ii); *see Benson v. Northwest

Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995); *Monette v. Electronic Data Sys.

Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996); *Gile v. United Airlines, Inc.*, 95 F.3d

492, 498 (7th Cir. 1996).  Reassignment may be provided to an employee who,

because of a disability, can no longer perform the essential functions of her current

position, with or without reasonable accommodation, unless the employer can

6

show that it would be an undue hardship.  29 C.F.R. § 1630.2(o); *see Haysman v.*

*Food Lion, Inc.*, 893 F. Supp. 1092, 1104 (S.D. Ga. 1995).

    If, as alleged by Defendants, Ms. Jackson could not be accommodated in her

DO position, then the onus was on Defendants, as Ms. Jackson's employer, to take

affirmative steps to place Ms. Jackson in an equivalent vacant position, because

they were in the best position to know which positions were available.  *See, e.g.*

*Aka v. Wash Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998); *Hendricks-*

*Robinson v. Excel Corp.*, 154 F.3d 685, 695-96 (7th Cir. 1998) (employer cannot

mislead disabled employees who need reassignment about full range of vacant

positions); *Mengine v. Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) (an employer has

a duty to make reasonable efforts to assist an employee in identifying a vacancy

because an employee will not have the ability or resources to identify a vacant

position absent participation by the employer); *Woodman v. Runyon*, 132 F.3d

1330, 1344 (10th Cir. 1997) (employers are far better placed than employees to

investigate in good faith the availability of vacant positions).  Defendants did not

attempt to locate a vacant position for Ms. Jackson that would not have resulted in

a pay decrease.

    Under Fulton County's ADA policy, reassignment either within the

employee's current department or within the county were considered reasonable

accommodations.  (Doc. 57, Dallas Dep. 11:7-15.)  Neither Fulton County nor the Sheriff's Office asked Ms. Jackson if she would be interested in an available position outside the Sheriff's Office so that her pay would not be cut.  (Jackson Decl. ¶ 6.)  Ms. Jackson never told anyone that she was not interested in reassignment to positions outside the Sheriff's Office and, in fact, she would have happily accepted a position outside the Sheriff's Office to maintain her pay and benefits.  (Jackson Decl. ¶ 7.)  Ms. Jackson did not decline the opportunity for Ms. Oka to conduct a county-wide search for available positions for her.  (Jackson Decl. ¶ 9.)  Ms. Dallas did not look for available positions for Ms. Jackson outside the Sheriff's Office.  (Doc. 57, Dallas Dep. 43:10-44:13.)  Ms. Jackson was not offered a position in the accommodation process either in the Sheriff's Office or with the County that paid what she was earning as a Detention Officer despite repeatedly asking that she be given a position in which her pay would not be cut. (Jackson Decl. ¶ 5.)

### b.      Maintenance of salary in a lower graded position.

Even if the only positions available were in a lower pay grade, like the RDS position, Defendants violated the ADA by not accommodating Ms. Jackson at her current salary.  An employer may reassign an individual to a lower graded position if there are no accommodations that would enable the employee to remain in the

current position and there are no vacant equivalent positions for which the individual is qualified.  However, if an employer maintains reassigned employees who are not disabled at their pay grade upon reassignment, it must do so for disabled employees like Ms. Jackson.  29 C.F.R. § 1630.2(o); *see also Cmty. Hosp. v. Fail*, 969 P.2d 667, 677-78 (Colo. 1998).

Here, Ms. Jackson brings forth strong evidence that it was possible to pay employees employed in the RDS position in the $30,000 range.  (Doc. 55, English Dep. 47:13-18; Doc. 55, English Dep. Ex. 16.)  Employees who are demoted do not necessarily get a cut in pay under Fulton County's Personnel policies.  (Doc. 55, English Dep. 20:1-5; Doc. 55, English Dep. Ex. 10.)  Defendants do maintain non-disabled employees at their current pay rates when they are demoted.  For example, Ms. Toomer, who is not disabled, was demoted to the RDS position, the same position as Ms. Jackson, and was allowed to retain her $39,393 salary despite the demotion.  (Doc. 53, Pl.'s Dep. 48:5-24; Doc. 55, English Dep. 45:3-18, 64:16-18; English Dep. Ex. 15.)  In addition, another RDS is being paid being paid $35,287, and not the minimum of $26,536.  (Doc. 55, English Dep. 46:11-21; Doc. 55, English Dep. Ex. 16.)[2]

---

[2] Defendants contend that Ms. Toomer was allowed to retain her salary because the 911 center paid part of it.  This is irrelevant.  If non-disabled employees retain their salaries upon reassignment, disabled employees must also retain their salary or

In addition, Fulton County's policies require that Defendants maintain Ms. Jackson's salary when she was reassigned.  Fulton County's ADA policy, which applies to employees of the FCSO, provides that: "If the position in which the employee is placed is within a lower pay scale, the employee the employee ***shall*** be placed at the salary level nearest his/her current salary not to exceed his/her current salary."  (Doc. 58, Oka Dep. 35:10-24; Doc. 58, Oka Dep. Ex. 1; Doc. 55, English Dep. Ex. 1; Doc. 54, Jackson Dep. 10:2-11; Doc. 54, Jackson Dep. Ex. 1.) Under Fulton County's demotion policy PR 300-5, "an employee may be demoted with no reduction in salary by mutual agreement between the personnel director and the appointing authority concerned provided that the present salary is within the salary range of the lower class."  (Doc. 58, Oka Dep. 42:3-15; Doc. 58, Oka Dep. Ex. 10; Doc. 55, English Dep. 30:2-19.)  An employee who is demoted does not necessarily get a cut in pay under Fulton County's Personnel policies.  (Doc. 55, English Dep. 20:1-5; Doc. 55, English Dep. Ex. 10.)

Every salary for classified employees in Fulton County has a pay range with a minimum and maximum salary.  (Doc. 55, English Dep. 31:18-21.)  The salary range for a DO was $33,058 to $50,371.  (Doc. 55, English Dep. 43:14-44:3; Doc.

---

they are being discriminated against.  29 C.F.R. § 1630.2(o).  Moreover, Fulton County funds the FCSO and it is all one pot of money.  (Doc. 54, Jackson Dep. 8:4-7.)

55, English Dep. Ex. 14.)  The salary range for a RDS was $26,546 to $45,952.

(Doc. 55, English Dep. 44:4-6; Doc. 55, English Dep. Ex. 14.)  Ms. Jackson's DO

salary, $33,058, fell within the salary range for RDS.  (Doc. 55, English Dep. 44:7-

10; Doc. 55, English Dep. Ex. 14.)

However, not a single employee of Defendants made any effort at all to

retain Ms. Jackson at her current salary when she was reassigned. Ms. Oka was not

involved in any way in determining what Ms. Jackson would be paid in the RDS

position because, according to Ms. Oka, Fulton County's ADA Coordinator, "it has

no relevance to the accommodation process at all."  (Doc. 58, Oka Dep. 34:11-15.)

According to Ms. Dallas, the FCSO attempted to comply with Fulton County's

ADA policy requiring that employees who are reassigned retain their current rate

of pay if it is within the salary range but the county would not let them comply but

Ms. Dallas has absolutely no proof that this is true.  (Doc. 57, Dallas Dep. 14:5-

15:12, 21:16-22:18, 23:7-23; Doc. 57, Dallas Dep. Ex. 1.)  In fact, Ms. Dallas

believed Ms. English attempted to get permission for Ms. Jackson to retain her DO

salary in the RDS position, however, Ms. English made absolutely no efforts to get

permission for Ms. Jackson to retain her salary.  (Doc. 55, English Dep. 25:2-25,

26:23-28:1; Doc. 57, Dallas Dep. 14:22-15:19.)

Ms. Oka did not personally request that Ms. Jackson retain her salary with

her reassignment and does not know if anybody else did.  (Doc. 58, Oka Dep. 40:25-41:16.)  During Ms. Jackson's reasonable accommodation process, Ms. Oka did not have any conversations with Mr. Brown or Sheriff Jackson about maintaining Ms. Jackson's salary after her reassignment since it fell within the salary range for her reassignment.  (Doc. 58, Oka Dep. 42:6-24.)

Nor did Ms. English speak with Sheriff Jackson to determine if Ms. Jackson's pay could be maintained when she was reassigned as a reasonable accommodation.  (Doc. 55, English Dep. 28:11-18.)  Ms. English does not recall speaking with the Personnel Director about Ms. Jackson's salary.  (Doc. 55, English Dep. 30:13-16.)  Ms. English made no attempts to see if Ms. Jackson could maintain her salary in the RDS position beyond looking at what the position was budgeted for and sticking to it, and Ms. English made no efforts to get more money budgeted for the position.  (Doc. 55, English Dep. 32:24-33:24, 34:7-19, 84:5-14.) Sheriff Jackson was not consulted in any way with respect to Ms. Jackson about retaining her salary when she was reassigned to the RDS position.  (Doc. 54, Jackson Dep. 17:8-11.)

However, Ms. English has made efforts in the past "a lot of times" to get more money than a position is budgeted for and those requests have been approved.  (Doc. 55, English Dep. 84:15-85:24.)  Ms. English simply had to

contact finance to get more funding a position but she made no efforts to do so for Ms. Jackson and did not even consider it.  (Doc. 55, English Dep. 86:4-13.) During her employment with the FCSO, Ms. Dallas had heard that people had been reassigned and retained their current salary.  (Doc. 57, Dallas Dep. 39:20-40:6.)

### c.    No undue burden.

Thus, Ms. Jackson easily meets her burden of establishing that Defendants failed to accommodate her when they failed to assist her in locating a vacant position equivalent to the DO position, reassigned her, and drastically cut her pay. Accordingly, the burden shifts to Defendants to show that it would have been an undue burden to assist Ms. Jackson with a county-wide search or to retain her DO pay in the RDS position.  This Defendants cannot do.

Defendants make the conclusory allegation that "due to budget constraints, it would have been an undue hardship to allow Plaintiff to maintain her Detention Officer salary in the Records and Documents Specialist position." [Doc. 59-2, p. 10.]  They also argue, with absolutely no support, that the only way Ms. Jackson could maintain her salary was if the FCSO eliminated another position.  *Id.*  They could not possibly know either of these things because, as shown above, **no efforts** were made at all to get more money budgeted for the position, and, more

importantly, **no undue hardship analysis was done**.[3]  (Doc. 55, English Dep. 25:2-25, 26:23-28:1; Doc. 57, Dallas Dep. 25:11-16, 50:21-24; Doc. 58, Oka Dep. 39:25-40:12.)  In fact, had Ms. English made any efforts to obtain funding for the RDS position, she likely would have succeeded like she had so many times in the past.  (Doc. 55, English Dep. 84:15-85:24.)  Ms. English simply had to contact finance to get more funding a position but she made no efforts to do so for Ms. Jackson and did not even consider it.  (Doc. 55, English Dep. 86:4-13.)  Therefore, Defendants have failed to meet their burden of showing that accommodating Ms. Jackson would have been an undue burden and summary judgment must be denied. *See Jernigan*, 17 F. Supp. 3d at 1324; *Hill v. Clayton Cnty. Sch. Dist.*, 619 F. App'x 916, 921-22 (11th Cir. 2015).

**B.    Ms. Jackson Establishes a Prima Facie Case of Retaliation Under the ADA.**

The ADA prohibits "retaliation against an employee based on her insistence upon her rights under the ADA." *Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1336, 1332-33 (M.D. Ala. 2002).  To establish a prima facie case of ADA

---

[3] At page 12, footnote 2 of their brief, Defendants allege that Ms. Jackson is not entitled to compensatory damages because they made good faith efforts to accommodate Ms. Jackson.  As shown in great detail above, Defendants did not engage in the interactive process in good faith, made no efforts beyond cursory to accommodate Ms. Jackson, and Ms. Jackson is entitled to compensatory damages.

14

retaliation, Ms. Jackson must show that (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *Norman v. S. Gaur. Ins. Co.*, 191 F. Supp. 2d 1321, 1335 (M.D. Ala. 2002); *Hulbert v. St. Mary's Health Care Sys. Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).

Defendants do not dispute that Ms. Jackson engaged in protected activity under the ADA or that her protected activity was related to the employment actions taken against her.  Rather, they argue that Ms. Jackson did not suffer an adverse employment action.  This could not be further from the truth.  Ms. Jackson suffered an adverse employment action when her pay was cut almost 20% to $26,536 when she was reassigned as a reasonable accommodation in May 2011.  and Ms. Jackson establishes a prima facie case of ADA retaliation. (Doc. 55, English Dep. 43:2-11; Doc. 55, English Dep. Ex. 13.)

### 1.    Ms. Jackson suffered an adverse action.

For the purposes of establishing retaliatory adverse employment actions, a plaintiff need only show that "a reasonable employee would have found the challenged action materially adverse" meaning that the challenged action would

have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 66-68 (2006).  Any reasonable worker would be dissuaded from engaging in protected activity by having their pay cut 20%.

Defendants contend that Ms. Jackson did not suffer an adverse employment action when she was demoted and her pay was cut, erroneously relying on *Turley v. SCI of Ala.*, 190 F. App'x 844, 846 (11th Cir. 2006).  This case is distinguishable from *Turley* for two reasons.  First, *Turley* is a discrimination case, not a retaliation case.  It is well accepted at this point that the bar for what constitutes an adverse employment action for retaliation claims is much lower than for discrimination claims.  However, under either standard, a cut in pay is an adverse employment action.

More importantly, *Turley* is factually distinct from this case.  *Id.* at 846-847.  In *Turley*, the plaintiff was given the option of retaining her current position or being demoted and chose demotion.  *Id.*  That is absolutely not what happened here.  Here, Ms. Jackson was never given the option of retaining her current position with no pay cut.  Rather, she was given the option of accepting the demotion or being fired.  (Doc. 53, Pl.'s Dep. 34:15-17, 36:19-37:12, 42:1-5.)  Given that Ms. Jackson's choice was hardly a choice at all, it certainly cannot be

said that she voluntarily accepted a demotion.  Rather, she suffered an adverse

employment action when she was given the choice of being fired or being

demoted.

### 2.  Ms. Jackson establishes pretext.

The evidence of pretext in this action is overwhelming.  To establish pretext,

Ms. Jackson must only "demonstrate 'such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered

legitimate reasons for its action that a reasonable fact-finder could find them

unworthy of credence.'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th

Cir. 1997) (citations omitted).  Where the reason presented by a defendant as a

legitimate non-discriminatory reason for the adverse employment action is

implausible or weak, an issue of pretext is ripe for consideration.  *See Miller-El v.

Dretke*, 545 U.S. 231, 251 (2005) ("If the stated reason does not hold up, its

pretextual significance does not fade because a trial judge, or an appeals court, can

imagine a reason that might not have been shown up as false.")  Sufficient

probative evidence is evidence "sufficient to permit a reasonable fact finder to

conclude that the reasons given by the employer were not the real reasons for the

adverse employment decision."  *Combs*, 106 F.3d at 1528; *see also Tucker v.*

*Talladega City Sch.*, 17 Fed. Appx. 289, 296 (11th Cir. 2006); *Hurlbert*, 439 F.3d at 1298 (quoting *Combs*, 106 F.3d at 1528)).  Ms. Jackson easily meets this burden.

Not only has Ms. Jackson adduced evidence to rebut Defendants' argument that these were non-retaliatory reasons, but she has also set forth a convincing mosaic of circumstantial evidence to demonstrate that Defendants' reasons are pretextual.  *See Aristyld v. City of Lauderhill*, No. 13-12235, 2013 WL 5735159, *3 (11th Cir. Oct. 23, 2013); *see also Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012); *Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1321, 1328 (11th Cir. 2010).  Evidence of pretext bars summary judgment.  *Id.*

On April 1, 2011, Ms. Jackson and her lawyers met with representatives of Defendants to discuss her accommodation.  (Doc. 53, Pl.'s Dep. 32:15-33:7; Doc. 53, Pl.'s Dep. Ex. 8; Doc. 58, Oka Dep. 28:9-12, 45:1-4.)  On April 22, 2011, Ms. Jackson and her lawyers again met with representatives of Fulton County and Ms. Jackson's lawyers shared that they believed Ms. Jackson was being discriminated against because of her disability by Defendants because of their refusal to reassign because of the proposed pay cut relating to the reassignment.  (Doc. 53, Pl.'s Dep. 37:13-39:11; Doc. 58, Oka Dep. 28:9-12.)  Despite being put on notice that their conduct violated the ADA, Defendants made no efforts to determine if reassignment without a pay cut was possible or required and on May 25, 2011, Ms.

18

Jackson was reassigned with a large pay cut. (Doc. 53, Pl.'s Dep. 42:1-5.)

Moreover, Defendants violated their own ADA policy when they cut Ms. Jackson's pay on reassignment.  An employer's failure to follow its policies is evidence of pretext.  *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1108 (11th Cir. 2001); *see also Hurlbert*, 439 F.3d at 1299 ("employer's deviation from its own standard procedures may serve as evidence of pretext.").

Finally, Defendants contention that retaining Ms. Jackson's salary was an undue burden is simply false.  **No efforts** were made at all to get more money budgeted for the RDS position, and, more importantly, **no undue hardship analysis was done**.  (Doc. 55, English Dep. 25:2-25, 26:23-28:1; Doc. 57, Dallas Dep. 25:11-16, 50:21-24; Doc. 58, Oka Dep. 39:25-40:12.)  In fact, had Ms. English made any efforts to obtain the funding for the RDS position, she likely would have succeeded like she had so many times in the past.  (Doc. 55, English Dep. 84:15-85:24.)  Ms. English simply had to contact finance to get more funding a position but she made no efforts to do so for Ms. Jackson and did not even consider it.  (Doc. 55, English Dep. 86:4-13.)  Therefore, Ms. Jackson has established that the alleged non-retaliatory reason articulated by Defendants for cutting her pay is false and summary judgment must be denied.

## III.    Conclusion

Defendants failed to accommodate Ms. Jackson and utterly failed to perform any analysis that it would be an undue burden to do so.  Even after it was brought to their attention that their actions likely violated the ADA, Defendants made no efforts to comply with the ADA or to accommodate Ms. Jackson.  As such, summary judgment must be denied.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certify that the foregoing has been prepared in the Times New Roman 14 font, as approved by the Court in LR 5.1B.

LEGARE, ATTWOOD & WOLFE, LLC

<u>s/ Cheryl B. Legare</u>
Cheryl B. Legare
Georgia Bar No. 038553
cblegare@law-llc.com

400 Colony Square, Suite 1000
1201 Peachtree Street, NE
Atlanta, Georgia 30361
Telephone:  (470) 823-4000
Facsimile:  (470) 201-1212
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PAMELA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | 1:14-CV-03493-AT-JSA |
| v. | ) | |
| | ) | |
| FULTON COUNTY SHERIFF | ) | |
| THEODORE JACKSON, IN HIS | ) | |
| OFFICIAL CAPACITY, AND | ) | |
| FULTON COUNTY, GEORGIA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2016, I electronically filed **PLAINTIFF'S**

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system

which will automatically send email notification of such filing to the following

attorneys of record:

Kaye Woodard Burwell
Kristen Boyd Williams

LEGARE, ATTWOOD & WOLFE, LLC

<u>s/ Cheryl B. Legare</u>
Georgia Bar No. 038553

21

400 Colony Square, Suite 1000
1201 Peachtree Street, NE
Atlanta, Georgia 30361
Telephone:  (470) 823-4000
Facsimile:  (470) 201-1212
Counsel for Plaintiff